UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RICHARD RIVERA,
    Plaintiff,

v.

CITY OF TORRINGTON BOARD OF
EDUCATION, and GARY LAMBOUR,
    Defendants.

3:06-cv-1752 (WWE)

## MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This action arises from plaintiff Richard Rivera's claims that defendants City of Torrington Board of Education ("Torrington") and Gary Lambour discriminated against him on the basis of disability and retaliated against him in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and violated his rights under the Equal Protection Clause of the Fourteenth Amendment. Plaintiff also brings state law claims pursuant to the Connecticut Fair Employment Practices Act prohibiting disability discrimination and aiding and abetting discrimination. Now pending before the Court is defendants' Motion for Summary Judgment. For the following reasons, defendants' Motion will be granted.

## BACKGROUND

The parties have submitted briefs, statements of facts, and supporting exhibits. This evidence reflects the following factual background.

Plaintiff commenced work for defendant Torrington as a second shift Custodian in 1999. At that time, his supervisor was the Director of Facilties Domenic Mainella.

1

He was initially assigned to work at Torrington High School. In January 2001, he commenced work as a second shift Custodian at Torrington Middle School. Plaintiff was one of seven custodians including one floating custodian who worked the second shift at the school.

In December 2001, plaintiff was suspended by former Superintendent Gregory Riccio for using school computers to view pornography.

In February 2003, plaintiff was given a written warning to cease an ongoing dispute that he had with a co-worker George Michna.

Commencing in 2004, plaintiff experienced depression and emotional difficulties as a result of marital problems. In 2005, plaintiff was diagnosed with an Axis I adjustment disorder with mixed anxiety and depressed mood, post traumatic stress disorder and a reading disorder. In October 2005, plaintiff informed Human Resources Director Gary Lambour that he was taking medications for his anxiety and depression.

During the summer of 2005, David Bascetta, Director of Facilities, informed plaintiff that he had observed him talking on his cell phone for approximately thirty minutes while he was was supposed to be on duty. Plaintiff was not disciplined for this conduct.

On November 3, 2005, Bascetta gave plaintiff a verbal warning for his failure to secure the school. Prior to this incident, Bascetta had sent a memorandum dated November 20, 2004 reminding all custodians to check the building before the end of a shift or after an event. This memorandum was precipitated by head custodian David Fenn's failure to check the building, which resulted in someone being left inside of the building.

2

On November 4, 2005, plaintiff's physician wrote a letter to defendant Torrington, requesting that plaintiff be transferred to Southwest School for a period of 59 days. Plaintiff's request was not granted. Southwest School has only one custodian, Michna.

At the end of November, plaintiff reported that he was no longer depressed.

In December 2005, secretaries in the main office reported that some of their personal belongings were missing from their desks. Because plaintiff had been seen in main office area, Bascetta informed plaintiff that he was forbidden from entering the main office.

That same month, Tony Giglio, Head Custodian for the day shift, complained about the conditions of plaintiff's work area. Bascetta conducted an investigation of the complaint but rendered no discipline. He did tell plaintiff that he should go home if he was unable to attend to his duties due to illness.

On January 24, 2006, Bascetta observed plaintiff, who was on duty, talking with a teacher for ten minutes. Two days later, Bascetta noted that plaintiff was absent from attending his assigned duties for approximately 30 minutes; instead, plaintiff was in a darkened room across from his cleaning barrel.

On January 28, 2006, Bascetta observed plaintiff, who was on duty, washing his truck at the school garage.

In February 2006, Bascetta directed plaintiff to remain on task. That month, Superintendent Susan O'Brien suspended plaintiff for one day as discipline for talking with a teacher while being on duty, sitting in a dark room rather than working while on duty, and for washing his personal vehicle in the school garage.

On February 22, 2006, Bascetta reminded plaintiff to stay out of the main office.

On March 6, 2006, plaintiff was issued a verbal warning for improper operation of power equipment, and he was also issued a directive not to operate any power equipment until further notice.

On March 7, 2006, plaintiff entered the main office of the school and opened the drawers of certain secretaries' desks in an attempt to locate a cell phone. Upon locating the cell phone, he handed the phone to an individual who said that it belonged to him. When questioned why he had entered the main area in contravention of explicit instruction, he answered that there was no other custodian available. However, a videotape showed that another custodian was available at the time.

On March 21, 2006, plaintiff was scheduled to appear for a meeting to discuss his conduct of March 7. Plaintiff failed to appear for the meeting but his union representative was present. Superintendent O'Brien suspended plaintiff for five days for being untruthful about being the only available custodian at the time on March 7. The union representative was to deliver the written letter of discipline to plaintiff on March 23, 2006.

On March 23, 2006, Bascetta visited the Middle School while plaintiff was on duty. At 9:15 pm, Bascetta observed plaintiff sleeping in a cushioned chair in the teacher's lounge. He asked Fenn to come to the area to observe plaintiff sleeping. After Bascetta woke him up, plaintiff jumped up and said that he was "thinking."

Bascetta also noted that plaintiff had modified his time card without authorization of the administrator or supervisor as required.

Subsequent to this incident, Bascetta recommended that plaintiff's employment be terminated. Superintendent O'Brien agreed and terminated plaintiff.

4

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir. 1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Liberty Lobby, 477 U.S. at 24.

### Discrimination Based on Disability

Plaintiff alleges that he was discriminated against based on his disability. Defendants seek summary judgment on the grounds that plaintiff is not disabled under the ADA.

To establish a prima facie case for discrimination under the ADA, plaintiff must show that (1) defendant is subject to the ADA; (2) plaintiff has a disability as defined by

5

the statute; (3) plaintiff was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability. Jacques v. Dimarzio, Inc., 386 F.3d 192, 198 (2d Cir. 2004). If plaintiff presents a prima facie case, defendant may rebut it by articulating a non-discriminatory business reason for the adverse employment action. Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d Cir. 2001). The plaintiff must then prove by a preponderance of the evidence that the supposed legitimate reason is actually a pretext for discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993).

Under the ADA, a "disability" is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual" or having "a record of such impairment." 42 U.S.C. § 12102(2)(A) and (B). The Supreme Court has observed that a "disability exists only where an impairment 'substantially limits' a major life activity, not where it 'might,' 'could,' or 'would' be substantially limiting if mitigating measures were not taken." Sutton v. United Air Lines, 527 U.S. 471, 482 (1999).

Plaintiff must identify a major life activity that is affected by his impairment. The substantial limitation factor requires the court to examine the nature, severity, duration and long term impact of the impairment. Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 870 (2d Cir. 1998). The impairment must be permanent or long term. Toyota Motor Mfr, Kentucky, Inc. v. Williams, 534 U.S. 184, 198 (2002).

In this instance, plaintiff asserts that he was denied the requested transfer to Southwest School as an accommodation to his disability. Plaintiff maintains that he suffered from anxiety and depression but has not identified a major life activity that was

6

substantially limited. In his deposition, plaintiff stated that he had trouble concentrating and focusing. However, no evidence suggests that plaintiff was substantially limited in his ability to work or perform another major life activity. See Oblas v. American Home Assur. Co., 199 F.3d 1323 (2d Cir. 1999) (temporary psychological impairment is not ADA disability). Accordingly, summary judgment will be granted on plaintiff's disability claim.

Even if plaintiff could demonstrate a disability, summary judgment would still be appropriate. Defendants assert as their legitimate non-discriminatory reason that plaintiff's termination was due to his failure to perform as instructed, his prior suspensions and, finally, sleeping on the job.

Plaintiff contends that defendants' reasons for his termination were pretextual because other employees committed similar violations and were not fired. A showing that similarly-situated employees outside the protected class received more favorable treatment can serve as evidence of pretext, but only if the plaintiff shows that he was "similarly situated in all material respects" to the comparators. Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000). To be similarly situated in all material respects, a plaintiff must show that the individuals were subjected to the same discipline standard and that these individuals engaged in conduct comparable to that of the plaintiff. Hogan v. Conn. Judicial Branch, 220 F. Supp. 2d 111, 119 (D. Conn. 2002).

Plaintiff asserts that other custodians made the same transgressions but were not terminated. Specifically, plaintiff points to a David Prahm, who was involved in an accident involving Torrington's car but was not disciplined; David Barber, who was accused of altering his time card but remains employed; Fenn, who only received a

7

disciplinary warning for failure to complete a building check; Michna, who was caught watching television and allegedly viewing pornography; Tim Butler, who was only suspended for improper use of school computers during work hours; and Joe Richardson, who was issued only a verbal warning for violation of the ethics code. The fact that these individuals were not terminated does not raise an inference of discrimination because they do not appear similarly situated in all material respects. None of these individuals experienced a litany of performance issues, complaints and discipline. Accordingly, summary judgment is appropriate on this count.

### Retaliation under the ADA

Defendant argues that plaintiff has failed to exhaust his ADA retaliation claim and that he cannot prove the requisite elements of such claim.

Plaintiff has failed to counter plaintiff's exhaustion argument and therefore the Court may deem this claim abandoned. Taylor v. City of New York, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003). However, even considered on the merits, this claim cannot survive summary judgment.

The retaliation provision of the ADA, 42 U.S.C. § 12203, provides that no "person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act."

To state a claim for retaliation under the ADA, a plaintiff must allege that: (1) he engaged in a protected activity; (2) the employer knew about his participation in the protected activity; (3) an adverse employment action occurred; and (4) there is a causal

8

connection between the adverse employment action and the employee's participation in the protected activity. Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999).

Even if the Court assumes that plaintiff has met the first and second prongs of this test, plaintiff cannot show a causal connection between plaintiff's participation in a protected activity and his termination. As was true for the discrimination under the ADA analysis, plaintiff again cannot show that defendants' reasons for their actions were pretextual. Summary judgment is appropriate on this count.

**Denial of Equal Protection Rights**

Plaintiff contends that he was denied his equal protection rights under the law in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. Plaintiff's claims is made under a "class of one" theory whereby plaintiff alleges that he has been intentionally treated differently from others similarly situated without rational basis for the difference in treatment. Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

To succeed under a "class of one" theory, plaintiff must demonstrate that there were other employees who were similarly situated to him in all material respects. Goldfarb v. Town of West Hartford, 474 F. Supp. 2d 356, 367 (D. Conn. 2007). As previously discussed, plaintiff has failed to demonstrate that he was similarly situated to any other employee and therefore plaintiff cannot establish a "class of one" theory. For these reasons, summary judgment will be granted on this count.

**State Law Claims**

Plaintiff's remaining claims are premised on state law. Having dismissed all of the federal claims, the Court will decline to exercise supplemental jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367(c)(3).

## CONCLUSION

For the foregoing reasons, the Court will GRANT defendants' motion for summary judgment [Doc. #39] and declines to exercise jurisdiction over the state law claims. The Clerk is instructed to close this case.

Dated at Bridgeport, Connecticut, this 12th day of June, 2008.

/s/ Warren W. Eginton, SUSDJ
Warren W. Eginton
Senior United States District Judge